UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS IMWALLE,

    Plaintiff,

v.          Case No. C–1-04-275

RELIANCE MEDICAL PRODUCTS,
INC., et al.,

    Defendant.

**ORDER**

This matter is before the Court upon motions for summary judgment filed by defendants Reliance Medical Products, Inc. ("Reliance"), Haag-Streit Holding US, Inc. ("Haag-Streit US"), and Haag-Streit USA, Inc. ("Haag-Streit USA") (doc. 47) and by defendant Haag-Streit Holding A.G. (Haag-Streit AG) (doc. 56). Plaintiff Dennis Imwalle opposes the motions (docs. 50). Defendants have filed a reply in support of their motions (doc. 58). The parties have submitted proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 53, 59).

**I. Introduction**

On April 20, 2004, plaintiff, an Ohio citizen, filed this action against defendant Haag-Streit AG, a privately-held Swiss company with its principal place of business in Bern, Switzerland; Haag-Streit US, a Delaware corporation with its principal place of business in Mason, Ohio and a wholly-owned subsidiary of Haag-Streit AG; and Reliance and Haag-Streit

USA, Delaware corporations with their principal places of business in Mason, Ohio, and wholly-owned subsidiaries of Haag-Streit US. Plaintiff brings federal and state law claims alleging that he was terminated on account of his national origin, on account of his age, and in retaliation for filing a discrimination charge with the EEOC. Plaintiff seeks to invoke the Court's supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

## II. Motion for summary judgment

Defendants move for summary judgment on the grounds that plaintiff has no direct evidence of national origin or age discrimination; assuming plaintiff can establish a prima facie case, he cannot demonstrate that defendants' legitimate, nondiscriminatory reasons for his termination were a pretext for national origin or age discrimination; plaintiff's retaliation claim fails as a matter of law because plaintiff cannot establish a causal connection between his protected activity and his termination since the termination decision was made before any protected activity; the breach of public policy claim fails because plaintiff was not an at-will employee, he cannot establish discrimination and retaliation, and Title VII, the ADEA, and O.R.C. § 4112 provide for adequate remedies; and even if Reliance breached plaintiff's employment agreement by removing him as President before the agreement's expiration, plaintiff has no damages because Reliance paid him through the expiration of the employment agreement and paid him two months' severance in accordance with the agreement's terms.

Plaintiff opposes defendants' motions on the grounds that defendants have not challenged his evidence of a prima facie case of age and national origin discrimination; plaintiff has sufficient evidence to establish pretext and to prove that defendants discriminated against him on the basis of his age and national origin; defendants' articulated reason for terminating plaintiff is

so ridden with error and intentional disregard for the truth that defendants could not have honestly relied upon it; plaintiff has additional evidence to support his claim that unlawful age and national origin discrimination were a motivating factor in his discharge; serious credibility issues exist with regard to the decision-makers' testimony; defendants are not entitled to summary judgment on plaintiff's retaliation claim because he was not terminated until after he had complained of age and national origin discrimination; and defendant is not entitled to summary judgment on plaintiff's breach of contract claim.

### III. Facts

The following facts are undisputed, unless otherwise noted.

1. The Haag-Streit group is a leading provider of instruments and medical practice equipment for ophthalmologists, optometrists, and opticians.

2. Haag-Streit AG is a Swiss holding company with its headquarters in Bern, Switzerland.

3. Under Haag-Streit AG, there are 16 companies located in Switzerland, England, Germany, Austria, France, and the United States.

4. Haag-Streit AG acquired Reliance approximately 15 years ago.

5. Reliance is a Delaware corporation with its principal place of business in Mason, Ohio.

6. Reliance manufactures medical practice equipment, such as chairs and stands.

7. In 1998, Haag-Streit AG reorganized its subsidiaries in the United States.

8. As part of the reorganization, Haag-Streit US was formed as a holding company for the Haag-Streit subsidiaries in the United States.

9. Haag-Streit US is a Delaware corporation with its principal place of business in Mason, Ohio.

10. Haag-Streit USA distributes ophthalmic instruments and equipment manufactured by Haag-Streit AG, Haag-Streit UK, Reliance, and other vendors in the United States.

11. Reliance hired plaintiff as President of Reliance in June of 1990.

12. The decision to hire plaintiff was made by Walter Neidhart, President of Haag-Streit AG.

13. Plaintiff reported directly to Neidhart until Neidhart separated from Haag-Streit AG some time in August 1993. After that, plaintiff reported to Walter Inäbnit, the Chairman of the four defendant companies, until plaintiff was terminated from Reliance on January 27, 2004.

14. In January 1999, Inäbnit named plaintiff the vice-president of Haag-Streit US.

15. After Clement Patry, the General Manager of U.S. operations, separated from Haag-Streit, Inäbnit announced in July 1999 that plaintiff would assume the overall management of Haag-Streit US.

16. According to defendants, plaintiff conditioned his employment with Reliance on the company's acceptance of an employment agreement prepared by him. Plaintiff denies that this was the case.

17. Plaintiff claims that he was employed at Reliance under the terms of an automatically renewable contract that was negotiated with Reliance's then Vice-President, Morgan Stobie, and that, in addition to this contract, the Director of Employee Relations, Roy Grandstaff, sent him an offer letter that outlined various other terms and conditions of his employment. Defendants dispute this.

18. It is undisputed that there was an employment agreement, which provided with respect to its duration that "The parties shall be deemed to have renewed this AGREEMENT for succeeding additional terms of one year unless either shall give written notice to the other of intention not to renew two months prior to the expiration date."

19. Effective July 1999, Inäbnit assumed the title of President and Chairman of Haag-Streit USA. Inäbnit named plaintiff as the Vice-President and Chief Operating Officer of Haag-Streit USA.

20. The Swiss-born René Ott was hired by Haag-Streit AG to work as the Chief Operating Officer in April 2000. In that capacity, he is responsible as a supervisor for operations of all 16 companies under Haag-Striet AG. Ott acts as Inäbnit's designated representative.

21. Plaintiff claims that while traveling together on a business-related trip to Iowa in September 1996, Inäbnit told him that he would never hire another American manager. Plaintiff alleges that later that day, Inäbnit told plaintiff, "My biggest mistake was hiring an American Manager [meaning plaintiff]. I will never make that mistake again." Defendants dispute these allegations.

22. Since Inäbnit purportedly made that statement to plaintiff, no other American-born manager has been hired from outside the company.

23. Plaintiff claims that at a management meeting in Bern, Switzerland on June 5 and 6, 2002, Ott suggested that, in response to financial problems, defendants' management should "Dismiss people [if possible elderly people]." Defendant denies this but admits that Ott did raise the possibility of considering this option when a company reaches a dangerous level of turnover.

24. According to Inäbnit, anyone over 60 is elderly. At the time of the June 2002 management meeting, plaintiff was two months shy of his 61st birthday.

25. The next month, Haag-Streit AG announced plans to send 37-year old Dominik Beck to the United States. Beck arrived in the United States in September as a contract employee for Haag-Streit AG.

26. Inäbnit was the President of Haag-Streit USA, but not in a day-to-day operations sense according to Beck. As President of Haag-Streit USA, Beck essentially replaced plaintiff, who was the Vice-President and Chief Operating Officer of Haag-Streit USA.

27. Although plaintiff believed that Beck was qualified to run a distribution company like Haag-Streit USA, Beck admitted to Ott and plaintiff that he was not qualified to run a manufacturing company like Reliance.

28. At some point, Inäbnit and Ott decided to terminate plaintiff's employment with Haag-Streit US, Haag-Streit USA, and Reliance.

29. Ott held a business meeting with plaintiff on May 7, 2003. During this meeting, Ott told plaintiff that "we are going in a new direction and we wish to replace you." Specifically, Ott said to plaintiff that "they were going in a new direction. Said they wanted to replace [plaintiff] with Dominik Beck as President of Reliance. Said that they know that [plaintiff] had achieved a lot, had been successful, and that they had paid [plaintiff]."

30. At the meeting, Ott presented plaintiff with a prepared letter of resignation. According to plaintiff, Ott advised plaintiff that they had decided to replace him with Beck, a point which defendants dispute. The letter stated that effective August 31, 2003, plaintiff would resign as president of Haag-Streit US, as Vice-President and Chief Operating Officer of Haag-Streit USA, and as President of Reliance.

31. Plaintiff inquired if there was any cause to terminate him. Plaintiff claims that Ott responded that he did not need a reason, but defendants deny this. When pressed, Ott suggested that perhaps plaintiff could remain as President of Reliance at a greatly reduced salary and reporting to Beck.

32. Plaintiff refused to sign the letter that was presented to him and advised Ott that he would need to consult with an attorney first. Haag-Streit AG did not terminate plaintiff's employment or remove him as President of Reliance and Haag-Streit US at that time despite his refusal to sign the letter.

33. On May 22, 2003, plaintiff's attorney sent a letter to Ott complaining that "the Company is breaching its written employment agreement with Mr. Imwalle and is committing unlawful age discrimination by terminating his employment." This was the first time plaintiff's age discrimination claim was raised.

34. Inäbnit and Ott decided to accept the employment agreement and follow it by paying plaintiff through the end of his contract.

35. Plaintiff states that after he complained, defendant effectively removed most of his authority by excluding him from meetings and making decisions without his input or knowledge. As an example, plaintiff alleges that once Beck was president of Haag-Streit USA, Ott and Inäbnit finally implemented a recommendation made by Inäbnit the prior year to shut down a subsidiary. Defendants deny each of these assertions.

36. On October 31, 2003, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging age discrimination, national origin discrimination, and retaliation.

37. On January 27, 2004, Ott met with plaintiff in Mason and presented him with a letter stating that plaintiff had been removed as President of Reliance and Haag-Streit US effective that day. In the letter, Reliance gave notice of its intent to not renew plaintiff's employment agreement past its expiration date of June 18, 2004. Plaintiff never returned to Reliance after the date of the meeting.

38. Plaintiff states that although the letter claimed that he was not terminated from Reliance, Ott took plaintiff's keys and company credit card, and plaintiff was escorted out of the building. Defendants deny this and claim that plaintiff had not been terminated as an employee of Reliance and was expected to be available at the company one day per week to consult with Beck.

39. Beck was named as plaintiff's replacement as President of both Reliance and Haag-Streit US in two separate Director's Consents signed by Inäbnit and dated January 27, 2004.

40. On February 25, 2004, plaintiff filed another charge with the EEOC asserting age and national origin discrimination and retaliation.

41. Plaintiff continued to receive his salary and medical benefits through June 18, 2004, plus two months' severance pay through August 18, 2004, pursuant to the employment agreement.

## IV. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***Id.*** at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

V. Applicable law

A. Discrimination

Title VII and Ohio law make it unlawful for an employer to discriminate against an employee because of the employee's national origin. 42 U.S.C. § 2000e-2(a)(1); Ohio Rev. Code § 4112.02(A).  The Age Discrimination in Employment Act (ADEA) and Ohio Revised Code § 4112.02(A) prohibit an employer from discriminating against an employee on account of the employee's age.  Under the law of this Circuit, the same evidentiary framework applies to discrimination claims brought under Title VII, the ADEA, and state law.  ***Minadeo v. ICI Paints,*** 398 F.3d 751, 763 (6th Cir. 2005); ***Mitchell v. Toledo Hospital,*** 964 F.2d 577, 582 (6th Cir. 1992). A plaintiff claiming discrimination under these statutes may establish a prima facie case by introducing either direct or circumstantial evidence that the defendant discharged an individual because of his membership in the protected class. ***Manzer v. Diamond Shamrock Chemicals Co.,*** 29 F.3d 1078, 1081 (6th Cir. 1994). Plaintiff may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) his position was filled by someone outside of the protected class. ***Manzer,*** 29 F.3d at 1081 (citing ***McDonnell Douglas Corp v. Green,*** 411 U.S. 792, 802 (1973); ***Gagne v. Northwestern National Insurance Co.,*** 881 F.2d 309, 313 (6th Cir. 1989)).

Where age discrimination is alleged, plaintiff can establish the fourth prong of the prima facie case by showing that he was replaced by a substantially younger individual, even if that individual is within the protected class. ***O'Connor v. Consolidated Coin Caterers Corporation,*** 517 U.S. 308, 313 (1996); see also ***Manzer,*** 29 F.3d at 1081 n. 2; ***Coryell v. Bank One Trust***

*Company N.A.,* 101 Ohio St.3d 175, 180, 803 N.E.2d 781, 787 (2004). Plaintiff may also establish the fourth prong of a prima facie case by showing that he was treated less favorably than a similarly-situated employee outside of the protected class. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). In such a case, plaintiff must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998).

The plaintiff's burden at the prima facie stage of the proceedings is not onerous, but "merely serves to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (2000) (citing *Hollins v. Atlantic Co.,* 188 F.3d 652, 659 (6th Cir. 1999) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981)).

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. ***Manzer v. Diamond Shamrock Chemicals Company,*** 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. ***Id.*** The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. ***Id.*** If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. ***Id.*** For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. ***Id.***

Although the Court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. ***Wexler v. White's Furniture, Inc.***, 317 F.3d 564, 576 (6th Cir. 2003) (citing ***E.E.O.C. v. Yenkin-Majestic Paint Corp.***, 112 F.3d 831, 835 (6th Cir.1997)). The Court in ***Wexler*** addressed the extent to which a

fact-finder may consider the reasonableness of an employer's decision:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. ***Smith v. Chrysler Corp.***, 155 F.3d 799, 807 (6th Cir.1998)) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); ***In re Lewis,*** 845 F.2d 624, 633 (6th Cir. 1988) ('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.') (emphasis in original) (internal quotation marks omitted).

*Id.*

### B. Retaliation

To prove a claim of retaliation, plaintiff must demonstrate that (1) he engaged in protected activity; (2) the exercise of his civil rights was known by defendant; (3) defendant thereafter took an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. ***Ford v. Gen. Motors Co.,*** 305 F.3d 545, 552-53 (6th Cir. 2002); ***Thatcher v. Goodwill Industries of Akron,*** 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997). The burden of establishing a prima facie case of retaliation "is not onerous, but one easily met." ***Nguyen v. City of Cleveland,*** 229 F.3d 559, 563 (6th Cir. 2000).

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not filed a discrimination charge. *Id.* Evidence that the defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of his protected rights is relevant to causation. *Id.* (citing ***Moon v. Transp. Drivers, Inc.***, 836 F.2d 226, 230 (6th Cir. 1987)); ***see also Ford,*** 305 F.3d at 554-55. The Sixth Circuit has

stated that while "'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'" *Ford,* 305 F.3d at 554-55 (quoting *Moon,* 836 F.2d at 229).

Once the plaintiff establishes a prima facie case of retaliation, the burden is on the defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir. 1986).

### C. Public policy

In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized a public policy exception to the employment-at-will doctrine. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995) (citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99). The clarity and jeopardy elements are questions of law to be determined by the court, while the causation and overriding justification elements are questions of fact to be left to the jury. *Id.* at 70, 652 N.E.2d

at 658. The Ohio Supreme Court has stated that "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 244, 773 N.E.2d 526, 531 (2002); *see also Salyer v. Honda of America Mfg., Inc.,* 2005 WL 2338786 * 11 (S.D. Ohio) (Holschuh, J.) (citing *Wiles,* 96 Ohio St.3d at 244, 773 N.E.2d 526) ("Where a statute adequately protects society's interest as expressed in the statute, the public policy is not jeopardized by the absence of a recognized action for wrongful discharge.")

### D. Breach of contract

To prove a breach of contract, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994). If a contract is clear and unambiguous, its interpretation is a matter of law for the court and there is no issue of fact to be determined. *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d. 107, 108, 652 N.E.2d 684, 686 (1995). A contract should be construed so as to give effect to the parties' intentions. *Aultman Hosp. Ass'n v. Community Mutual Ins. Co.,* 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923 (1989). The parties' intent is presumed to reside in the language they choose to employ in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, syll. ¶ 1, 509 N.E.2d 411 (1987).

## VI.  Opinion

## A. Discrimination claims

After careful review of the record, and for the reasons set forth below, the Court finds that defendants are not entitled to summary judgment on plaintiff's claims for national origin and age discrimination.  Defendants do not dispute for summary judgment purposes that plaintiff has come forward with sufficient evidence to establish a prima facie case of age and national origin discrimination.  Plaintiff has produced evidence to show that he is an American who is over the age of forty; he was objectively qualified for his position; he was terminated; and he was replaced by an individual outside of the protected classes.  Defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's termination in that they claim he was terminated for poor management, including inventory and consignment problems at one subsidiary which led to a $1 million write-off.  Plaintiff has presented evidence that calls into question whether the reason offered by defendants is pretextual.  This includes evidence which suggests that plaintiff was not responsible for the inventory and consignment problems and evidence that Ott, a decision-maker, made a comment regarding dismissing elderly employees under certain circumstances shortly before defendants sent plaintiff's purported replacement, who was substantially younger than plaintiff, to the United States.  It is for the jury to weigh the evidence presented by the parties, make credibility determinations, and decide whether the reason offered by defendants is the true reason for the termination decision.  Accordingly, the Court will deny defendants' motion for summary judgment as to the discrimination claims.

**B. Retaliation claim**

Plaintiff has come forward with sufficient evidence to withstand summary judgment on his retaliation claim.  Plaintiff has produced evidence to show that he engaged in protected activity by opposing defendants' alleged discrimination and by filing a charge with the EEOC; the exercise of his civil rights was known by defendants; defendants took an adverse employment action against plaintiff; and a reasonable fact-finder could draw an inference of a causal connection between the protected activity and the adverse employment action.  Although defendants argue that plaintiff cannot establish a causal connection because the termination decision was made prior to any protected activity, the sequence of events and the evidence of record creates an issue as to whether plaintiff was eventually terminated due to protected activity in which he engaged prior to his actual termination.  This is a matter to be resolved by the jury after weighing the parties' evidence.  Accordingly, defendants are not entitled to summary judgment on plaintiff's

 retaliation claim.

**C. Breach of contract claim**

Defendants are entitled to summary judgment on plaintiff's claim that defendants "breached [his] written employment contract by terminating his employment without just cause." The language of the employment agreement is clear and unambiguous insofar as a "just cause" requirement for termination is concerned.  The contract plainly does not provide that plaintiff could be terminated only for just cause.  Nor does the contract incorporate any other agreements by the parties to that effect.  To the contrary, the contract expressly provides that the written employment agreement contains the entire agreement and understanding of the parties and that it

cannot be amended or changed "except in writing signed by both parties." Plaintiff has not produced a writing signed by both parties that adds a just cause requirement.

Plaintiff suggests that he received assurances from defendant that he would not be terminated without just cause. Plaintiff testified at his deposition that he received a "letter of offer" from the Head of Human Resources at Reliance, Roy Grandstaff, which contained certain elements of the parties' agreement, and he also received assurances that "the Reliance employment practice policies were part of the agreement," but plaintiff does not know whether that assurance was in the letter. See plaintiff's depo. pp. 29-30. Even assuming that such assurances could be considered to be part of the parties' employment agreement despite the express provisions of the written contract, plaintiff has not produced evidence to show that it was defendants' practice or policy at the time of his hiring to not terminate an individual without cause. Plaintiff alleges that Grandstaff told him when he was hired that the company had not terminated anyone without cause up to that time, but this representation falls far short of a policy to never terminate an individual without just cause and clearly cannot be construed as a contractual agreement that plaintiff could be terminated only for just cause. Thus, because plaintiff has not come forward with sufficient evidence to raise a genuine issue of material fact as to whether defendants breached his written employment contract by terminating him without just cause, defendants are entitled to summary judgment on this claim.

### D. Public policy claim

Plaintiff does not contest defendants' motion for summary judgment with respect to his public policy claim. The Court will therefore grant summary judgment in favor of defendants on this claim.

## VII.  Conclusion

Defendants' motions for summary judgment (docs. 47, 56) are **GRANTED** as to plaintiff's breach of contract and public policy claims and **DENIED** as to plaintiff's claims for age and national origin discrimination and retaliation under state and federal law.  This case will proceed to trial on the discrimination and retaliation claims in accordance with the schedule established by the Court.

**IT IS SO ORDERED**.


                                      S/ Herman J. Weber
                                            HERMAN J. WEBER
                              SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\04-275sjkagenodiscPUB.wpd